In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00196-CR


______________________________




MELISSA DEANN LILLY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 32383-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Melissa Deann Lilly was placed on community supervision for five years in May 2006 upon
her conviction for debit card abuse. On August 24, 2006, the State filed its original application to
revoke Lilly's community supervision in which it alleged only one violation of the conditions of
community supervision--that Lilly committed the offense of fleeing from a police officer. On
September 7, 2006, the State filed its amended application for revocation in which it alleged four
violations: (1) Lilly committed the offense of fleeing from a police officer, (2) Lilly failed to pay
the $5.00 per month for court costs, (3) Lilly used marihuana in September 2006, and (4) Lilly failed
to perform the requisite hours of community service for the months of July and August 2006. 

 The trial court heard the State's application September 28, 2006. At the beginning of the
hearing, the trial court recited the relevant procedural history of the case and announced that the
State's amended application "is the matter before this Court." Lilly initially indicated that she was
going to plead not true to the allegations in the State's amended application. The State then indicated
that it intended to abandon the fleeing police allegation and proceed to an indictment on that
allegation, but would then continue to seek revocation on the remaining three allegations.

 When defense counsel learned of the State's intention, he sought and was granted a moment
to speak with Lilly, who apparently decided to plead true to all of the allegations rather than face the
possibility of trial on the allegation of fleeing a police officer. The record indicates that the State
acquiesced to this decision and purported to revoke its abandonment of the first allegation. Lilly
then pleaded true.

 It is this irregularity regarding Lilly's indecision and the State's abandonment which forms
the basis of Lilly's arguments on appeal. (1) She argues she only received notice of the State's original
application in which it alleged she had fled from the police. Therefore, she argues that she was never
put on notice of the allegations contained in the State's amended application and that the trial court
abused its discretion by revoking her community supervision on those remaining allegations. Lilly's
next issue is based in large part on the alleged error regarding notice of the amended application. 
She argues that, since she did not have adequate notice of the allegations in the amended application,
the only allegation at issue at the revocation hearing was the allegation involving the offense of
fleeing from an officer. She then points to the State's abandonment of the fleeing allegation as a
basis for revocation and its intention to seek an indictment on that charge. This abandonment was
complete and effectively removed the only allegation pending in the trial court. Lilly then contends
that she pleaded true to nothing and that her revocation was a "legal nullity." 

 Since Lilly advances these two intertwined issues, we address the issue as one: whether
Lilly's plea of true to the allegations in the amended application was rendered involuntary due to the
failure of the State to provide adequate notice of its amended application. (2)

 The amendment of an application to revoke community supervision is governed by
Article 42.12, which provides in pertinent part:

 In a felony case, (3) the state may amend the motion to revoke community supervision
any time up to seven days before the date of the revocation hearing, after which time
the motion may not be amended except for good cause shown, and in no event may
the state amend the motion after the commencement of taking evidence at the
hearing. The judge may continue the hearing for good cause shown by either the
defendant or the state.


Tex. Code Crim. Proc. Ann. art. 42.12, § 21(b) (Vernon 2006). The record demonstrates that the
State filed its amended application twenty-one days prior to the revocation hearing.

 The record of the revocation hearing provides consistent support that Lilly had notice of the
State's amended application to revoke her community supervision:

 [STATE]: Your Honor, we're ready, and understand that Ms. Lilly's going
to plead not true. We're going to abandon the state jail evading, proceed to an
indictment on that charge; and proceed on the other violations alleged: Failure to
pay, use of marijuana, and failure to do community work service as alleged in the
application -- or amended application.


 [DEFENSE COUNSEL]: Your Honor, we're ready but for the fact of
what I just heard and what [the State] informed me about the indictment. I haven't
discussed that with my client and ask that I have just one minute to talk to her.

 

 THE COURT: I'll give it to you.


 . . . .


 THE COURT: All right. Are y'all now ready to proceed?

 

 [DEFENSE COUNSEL]: We are, your Honor.

Nothing in the above exchange (or anywhere else in the record) suggests that Lilly did not have
notice of the allegations in the State's amended application. In fact, defense counsel only requests
that he have a moment to speak to his client to discuss the announcement that the State would
abandon the allegation regarding fleeing an officer and would, instead, pursue an indictment on that
allegation. It appears that, when faced with that prospect, Lilly decided to plead guilty to all the
charges so as to avoid the possibility of a trial on charges of fleeing a police officer:

 [STATE]: Judge, I'm sorry. I've been informed Ms. Lilly's going to plead
true to all of the allegations originally alleged by the State, including the evading
arrest.

 

 THE COURT: Okay. All allegations left are intact then?

 

 [STATE]: Yes, your Honor.

As the trial court inquired into Lilly's competency in relation to her plea of true, defense counsel
explained that he was appointed as substitute counsel twenty-one days prior to the hearing and stated
that he believed Lilly to be fully competent. He also indicated that he had been provided enough
time to prepare for the revocation hearing:

 THE COURT: Have you had adequate time to prepare for this matter?

 

 [DEFENSE COUNSEL]: I have, your Honor.


Further, Lilly waived her right to have the amended application read in open court:


 THE COURT: Okay. The State has filed an amended application
seeking to have your probation revoked. You have a right to have that document read
to you in open court if you wish. You want it read to you or not?

 

 [LILLY]: No, sir.

 

 THE COURT: Are you telling me you fully understand the nature of
the accusations?

 

 [LILLY]: Yes, sir.

 

 THE COURT: How do you plead to these allegations, are they true or
not true?

 

 [LILLY]: True, sir.

 

 THE COURT: Upon your plea of true I must find the accusations true. 
I cannot find them not true; do you understand that?

 

 [LILLY]: Yes, sir.

(Emphasis added.) When the trial court announced at the very beginning of the hearing that the
hearing would involve the allegations contained in the amended application, Lilly neither lodged any
objection regarding notice of those allegations before the trial court nor did she or defense counsel
express any amount of surprise. We further note that Lilly also signed the stipulation of evidence
reflecting all of the State's allegations and testified at the hearing as to the circumstances surrounding
the various allegations. Simply put, nothing in the record suggests that Lilly's plea of true to the
allegations in the amended application was rendered involuntary due to a lack of notice. (4)

 Based on the record, we conclude that Lilly received notice of the State's amended
application to revoke probation and that, therefore, her plea of true to the allegations in the amended
application was not rendered involuntary or a "legal nullity" on the basis of inadequate notice. We
reject Lilly's contention to the contrary and overrule her points of error. 

 We affirm the trial court's judgment.



 Bailey C. Moseley

 Justice


Date Submitted: May 8, 2007

Date Decided: June 1, 2007


Do Not Publish
1. When a defendant is alleged to have violated the terms and conditions of community
supervision and the State seeks to revoke, the defendant does not enter a new plea of guilty or nolo
contendere--the defendant enters a plea of true or not true. Tex. Code Crim. Proc. Ann. art. 42.12,
§ 5(b) (Vernon 2006). Accordingly, Rule 25.2(a)(2) of the Texas Rules of Appellate Procedure does
not apply so as to limit a defendant's ability to appeal from a subsequent plea of true to a revocation
motion. Jackson v. State, 168 S.W.3d 239, 242 (Tex. App.--Fort Worth 2005, no pet.); see Tex.
R. App. P. 25.2(a)(2).
2. Lilly's first point of error is dedicated to the contention that she did not have notice of the
allegations in the State's amended application to revoke her community supervision. The record,
however, does not indicate that Lilly objected in the trial court to proceeding on the amended
application to revoke. The record fails to demonstrate that Lilly raised the issue of inadequate notice
in the trial court. Even constitutional error may be waived by the failure to specifically object. See
Tex. R. App. P. 33.1; Arana v. State, 1 S.W.3d 824, 827 n.3 (Tex. App.--Houston [14th Dist.] 1999,
pet. ref'd) (citing Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995)). 
3. Lilly was originally charged with debit card abuse, which is a state jail felony. See Tex.
Penal Code Ann. § 32.31(d) (Vernon Supp. 2006).
4. It appears that Lilly focuses exclusively on the amended application to revoke as the basis
for her contention that she did not receive adequate notice of those added allegations. That is, it does
not appear that she is arguing that the State's purported abandonment of one of the allegations on the
day of trial was the relevant change to the application. However, for the sake of clarity, we note that,
generally speaking, the abandonment of an allegation is not treated as an amendment. See Brown
v. State, 843 S.W.2d 709, 712 (Tex. App.--Dallas 1992, pet. ref'd) (concluding that "abandonment
is not an amendment within the scope of article 28.10" pertaining to the amendments of indictments). 
We add that we do not reach the issue of whether the State did, in fact, abandon the first of its
allegations or whether the State successfully revoked the abandonment; neither issue was specifically
raised in Lilly's brief.



"false" Name="Medium Shading 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00054-CV

                                                ______________________________

 

 

              CITY OF CLARKSVILLE, CLARKSVILLE
INDEPENDENT

SCHOOL DISTRICT, RED RIVER
COUNTY, AND LANGFORD

CREEK WATER CONSERVATION
DISTRICT, Appellants

 

                                                                V.

 

                                          DRILLTECH, INC., Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                          Red
River County, Texas

                                                          Trial Court
No. CV02249

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

            The City of Clarksville, Clarksville
Independent School District, Red River County, and Langford Creek Water
Conservation District (hereinafter collectively referred to as the Taxing
Units), appeal the trial courts grant of a summary judgment in favor of
landowner Drilltech, Inc., finding that all tax liens
after its purchase of property in November 2008 were forfeited or
extinguished.  We affirm the trial
courts judgment.  

I.          Factual
and Procedural Background

            This appeal focuses on the application of Section
31.08 of the Texas Tax Code, which reads: 


            (a)        At
the request of any person, a collector for a taxing unit shall issue a
certificate showing the amount of delinquent taxes, penalties, interest, and
any known costs and expenses under Section 33.48 due the unit on a property
according to the units current tax records.  If the collector collects taxes for more than
one taxing unit, the certificate must show the amount of delinquent taxes,
penalties, interest, and any known costs and expenses under Section 33.48 due
on the property to each taxing unit for which the collector collects the taxes.
. . .

 

            (b)        Except
as provided by Subsection (c) of this section, if a person transfers property
accompanied by a tax certificate that erroneously indicates that no delinquent
taxes, penalties, or interest are due a taxing unit on the property or that
fails to include property because of its omission from an appraisal roll as
described under Section 25. 21,[1] the units tax lien on the
property is extinguished and the purchaser of the property is absolved of
liability to the unit for delinquent taxes, penalties, or interest on the
property or for taxes based on omitted property. The person who was liable for
the tax for the year the tax was imposed or the property was omitted remains
personally liable for the tax and for any penalties or interest. 

 

Tex. Tax Code Ann.
§ 31.08(a), (b) (West 2008). 

            Jason R. Petty and Beth Ann Petty
sold a 16.374-acre tract of land situated in Red River County to Drilltech, Inc., on November 7, 2008.  On November 4, 2008, Gooding Title Company
ordered tax certificates from Red River County and the County Appraisal
District.  Specifically, Red River County
was asked to check your records for tax suit on this property, with the
property description being 10.019 acres, 6.282 acres & .73 acres; Wade H. Vining Survey, Abst. #878.  

            After describing the property as A0878
Vining, W.H., both certificates list the land market
value as $15,330.00, and represent that improvements have a 0 value.  The tax certificate issued on November 4,
2008, by the Red River Appraisal District located in Clarksville, Texas,
indicates the request was made by Gooding Title and certifies that after a
careful check of the tax record of this office, the following current/delinquent
taxes, penalties and interest are due to Clarksville ISD.  It showed a total amount of $1,158.48 owed
for years 20062008, all of which were paid from the proceeds of the sale at
closing.  The County Tax Office issued a certification
that total taxes due from 2006 through November 2008 were $468.90, which were
also paid at closing.  

            In December 2009, Drilltech received a notice of intent to sue from the City
of Clarksville and Clarksville ISD for collection of delinquent taxes prior to Drilltechs purchase of the property.  Drilltech sought
declaratory judgment that the certificates indicated that no taxes were due,
and thus, that the liens were forfeited under Section 31.08(b) of the Texas Tax
Code.[2]  The City and Clarksville ISD answered the
suit and filed a cross-claim seeking foreclosure of the property for delinquent
taxes in 2007 and 2008, along with penalties and interest, as well as a
personal judgment against the Pettys.[3]  Drilltech filed a
motion for summary judgment urging the trial court to apply Section 31.08.  

            The Taxing Units filed a
cross-motion for summary judgment and countered with the affidavit of Jan
Tinsley, chief appraiser for Red River County. 
After stating that she is the custodian of all appraisal district
records and all tax records, both current and delinquent, for said school
district and city, Tinsley explained that two taxing accounts were created for
the same property.  According to Tinsley,
Capital Appraisal Group, LLC, appraised complex properties, such as the one at
issue, for the district.  She stated, Because
the appraisal districts staff routinely appraises the land itself in-house, it
is administratively convenient to maintain two separate tax accounts, one for
the land appraised by the district and identified by its own unique account
number, and another account for the improvements situated thereon.  As proof, Tinsley attached a contract for
appraisal services between the Appraisal District and Capital Appraisal Group,
LLC.[4]  A Tax Year 2008 Industrial Property File
demonstrated that Capital Appraisal had appraised improvements at $130,000.00
when the property was owned by the Pettys.    

            Urging that the appraisal value of
the land was only $15,330.00 because the improvements situated upon the land
were separately appraised and assessed under another account number as is
customary in the case of industrial properties . . . , and the improvement
account is indeed delinquent for tax years 2007 and 2008, the City and
Clarksville ISD argued that Drilltech should have
known additional taxes were due.  They
further argued that the only certificates produced showed delinquent taxes
owing and that Section 31.08 did not apply. 
Red River County and Langford Creek Water Conservation District
intervened in the suit, seeking $3,266.13 for 2007 and 2008 taxes, and filed
their own motion for summary judgment to recover taxes upon the improvements on
the land, seeking personal judgment against the Pettys
and foreclosure of their liens.  

            Drilltech
responded to the cross-motion for summary judgment by attaching summary
judgment evidence that the county routinely attached tax certificates
containing figures in the section for land and improvements for commercial
properties in response to Goodings requests. 
They attached the affidavit of Kay Witmer,
Escrow Officer for Gooding for eight years, which stated the following:

            One of my duties at Gooding Title
Co. is to place orders for tax certificates with Red River Appraisal District
and Red River County Tax Collector in connection with sales and/or mortgages of
real property in Red River County, Texas, in which Owners and/or Loan Title
Polices are ordered. 

 

            In placing these orders for tax
certificates, I use a form, . . . filled in by me and either faxed or e-mailed
to the above taxing entities. 

 

            . . . . 

 

            The orders for tax certificates
placed by me with the taxing entities are intended by me to cover taxes for
both the land described in the order and permanent improvements attached to
such land.  

 

            Only the land is described in the
order, and I have never placed a separate order for tax certificates on the
permanent improvements, which I understand to be a component part of the
land.  Neither taxing entity has ever
requested that I place a separate order for the land and the improvements. 

 

            The taxing entities respond to my
orders by issuing a tax certificate on the land, and where permanent
improvements are attached to the land, permanent improvements are included on
the tax certificate. 

 

            . . . . 

 

            In response to our orders, each
taxing entity furnishes Gooding Title Co. a tax certificate showing what, if
any, taxes, penalties and interest are due and owing on the land and
improvements (if any) which are the subject of the order. . . .

            

            . . . .

 

            Except for the omitted taxes on the
improvements in the Petty-Drilltech sale, which
resulted in this suit, I have no knowledge of either the Red River Appraisal
District or the Red River County Tax Collector making a claim for taxes,
penalties and interest allegedly due on improvements permanently attached to a
particular tract of land and which taxes, penalty and interest were omitted
from the tax certificate ordered and received by Gooding Title Co. 

 

            I have never been advised by either
taxing entity that land and permanent improvements are customarily carried on a
separate account on industrial property.[5]  

 

            The trial court found that all tax
liens on the real property were forfeited or extinguished, and found that Drilltech would not be personally liable for any taxes
owed.  

II.        Standard
of Review

            The standard for reviewing a
traditional motion for summary judgment is well established.  See
Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 800
(Tex. 1994); Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 54849 (Tex. 1985).  We
review de novo a summary judgment to determine whether a partys right to
prevail is established as a matter of law.  Dickey
v. Club Corp. of Am., 12 S.W.3d 172, 175 (Tex. App.Dallas 2000, pet.
denied).  A party moving for traditional
summary judgment is charged with the burden of establishing that there are no
genuine issues of material fact and it is entitled to judgment as a matter of
law.  Tex.
R. Civ. P. 166a(c); M.D. Anderson
Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d
22, 23 (Tex. 2000) (per curiam).  A matter is conclusively established if
ordinary minds could not differ as to the conclusion to be drawn from the
evidence.  Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex. 1982).  When both sides move for summary judgment, as
they did here, and the trial court grants one motion and denies the other,
reviewing courts consider both sides summary-judgment evidence, determine all
questions presented, and render the judgment the trial court should have
rendered.  Gilbert Tex. Constr., L.P. v.
Underwriters at Lloyds London, 327 S.W.3d 118, 124 (Tex. 2010) (citing Embrey v. Royal Ins. Co. of Am., 22 S.W.3d
414, 41516 (Tex. 2000)).

III.       The
Trial Court Properly Granted Summary Judgment 

            Both parties argue about the meaning
of the phrase indicat[ing]
that no delinquent taxes, penalties, or interest are due.  Tex.
Tax  Code Ann. § 31.08(b).  On the certificates, the property was
described by location, description, and situs address
and contained a space for valuation for improvements.  Because the improvement valuation was listed
as 0, Drilltech argued that the tax certificates
showed no taxes owing.  The Taxing Units
argue that the tax certificate itself must contain a statement that no
delinquent taxes, penalties, or interest are due.  

            A tax bill for real property must
include the appraised value and taxable value of the property and the amount of
taxes imposed on the property by the unit. 
Tex. Tax Code Ann. § 31.01(c)(11)(A),
(C) (West Supp. 2011).  Real property in
the Tax Code specifically includes improvements made on the land.  Tex.
Tax Code Ann. § 1.04(2)(B) (West 2008). 
Before an executory contract is signed by the
purchaser of property, the seller is required to provide the purchaser with a
tax certificate from the collector to ensure proper disclosure of tax
payments.  Tex. Prop. Code Ann. § 5.070(a)(1) (West 2004).  Section 9.3040 of the Texas Administrative
Code requires the following affirmation to accompany the list of delinquent
taxes, penalties, and interest, and any known costs and expenses on the tax
certificate:  a careful check of the tax
records of the office has been made on the specified property and the tax
certificate indicates the amount of delinquent taxes.  34 Tex.
Admin. Code § 9.3040 (2011) (Comptroller of Pub. Accounts, Tax Record
Requirements).  The definition of
property in the Texas Tax Code includes any matter or thing capable of
private ownership.  Tex. Tax Code Ann. § 1.04(1) (West
2008).  Section 31.08(a) reads that [a]t
the request of any person, a collector for a taxing unit shall issue a
certificate showing the amount of delinquent taxes, penalties, interest, and
any known costs and expenses under Section 33.48 due the unit on a property
according to the units current tax records. 
Gooding Title specifically requested that tax certificates be issued on
the property, and provided the property address.  Thus, the Taxing Units were required to issue
a tax certificate showing the sums due according to the current tax records for
both the value of the land and the improvements.  

            The tax certificates specifically
certified and guaranteed that only the amounts listed were due for the above
described property and on the described property.  No indication of delinquent taxes owing for
any improvements were shown.  Therefore,
the certificates erroneously indicate[d] that no delinquent taxes, penalties,
or interest [were] due[6] with respect to any
improvements.  Tex. Tax Code Ann. § 31.08(b).  Therefore, we find Drilltech
proved its entitlement to summary judgment as a matter of law. 

IV.       Conclusion


            We affirm the judgment of the trial court. 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          October 12, 2011

Date
Decided:             November 15, 2011

 











[1]Section
25.21 reads:

 

                (a)           If the chief appraiser discovers that real property was
omitted from an appraisal roll in any one of the five preceding years or that
personal property was omitted from an appraisal roll in one of the two
preceding years, he shall appraise the property as of January 1 of each year
that it was omitted and enter the property and its appraised value in the
appraisal records. 

 

                (b)           The entry shall show that the
appraisal is for property that was omitted from an appraisal roll in a prior
year and shall indicate the year and the appraised value for each year.  

 

Tex. Tax Code Ann. § 25.21 (West
2008).  





[2]Following
the trial courts grant of Drilltechs motion for
summary judgment, Drilltechs cause of action against
the Taxing Units was severed from their causes of action against the Pettys.  The judgment
in this case became final when the Taxing Units nonsuited
their cross-claims against the Pettys on October 11,
2011. 

 





[3]Clarksville
ISD claimed $1,255.67 for 2007, and $1,352.00 for 2008.  The City claimed $1,027.00 was owed in both
2007 and 2008, and Clarksville ISD sought $1,255.67 for 2007 and $1,352.00 for
2008.  The penalties and interest amount
to $2,995.17, for an aggregate delinquency of $7,656.84.  





[4]The
contract attached was entered into on June 9, 2010, but there is some evidence
that Capital Appraisal Group assessed the propertys value prior to this date. 





[5]The
Taxing Units objected to the following portions of Witmers
affidavit on the bases that her intent and/or knowledge were not controvertible
or competent summary judgment evidence:  (1)
that her requests are intended by me to cover taxes for both the land
described in the order and permanent improvements attached to such land; (2)
her statement that she had no knowledge of the Taxing Units making a claim for
taxes, penalties and interest allegedly due on improvements permanently
attached to a particular tract of land and which taxes, penalty and interest
were omitted from the tax certificate ordered and received by Gooding; and (3)
that in most cases, no one who owns or works for Gooding Title Co. knows what,
if any, improvements are attached to the land on which the certificates are
ordered.  With respect to the third
statement, the Taxing Units also objected that Witmer
failed to demonstrate personal knowledge of what other employees would know.  Last, they complained that Witmers
statements that she understood the permanent improvements to be a component
part of the land and that Gooding considers all taxes owing are to be shown on
the tax certificate, were conclusory.  The Taxing Units separately appeal the trial
courts overruling of all objections to Witmers
affidavit.  We find that the trial
courts application of Section 31.08 dispositive of the appeal, without regard
to Witmers affidavit.  Therefore, we do not address the admission or
exclusion of the affidavit. 





[6]This
language in Section 31.08(b) has been revised several times.  The 1953 predecessor of the statute, Vernon
Annotated Civil Statutes Article 7258a, stated:  When any certificate so issued shows all
taxes, interest, penalty and costs on the property therein described to be paid
in full to and including the year therein stated, the said certificate shall be
conclusive evidence of the full payment of all taxes, interest, penalty and
costs due on the property described in said certificate for all years to and
including the year stated therein.  Intl Paper Co. v. State, 380 S.W.2d 18,
1920 (Tex. Civ. App.Texarkana 1964, writ refd n.r.e.).  In 2005,
the Legislature revised the statute from if a person transfers property
accompanied by a tax certificate erroneously showing that no delinquent taxes,
penalties, or interest are due to if a person transfers property accompanied
by a tax certificate that erroneously indicates that no delinquent taxes,
penalties, or interest are due.  Act of
May 23, 2005, 79th Leg., R.S., ch. 846, § 2, 2005
Tex. Gen. Laws 2888, 288889 (current version at Tex. Tax Code Ann. § 81.08(b) (West 2008)).  In Intl
Paper Co., we found that the purpose of Article 7258a was remedial.  It gives the citizens of Texas a conclusive
right to believe in and rely upon the acts of their officers. . . .  The purpose of the statute was to relieve the
purchasers of property from the secret tax liens upon property for which they
have purchased and paid, or obligated themselves to pay for.  This relieves the purchaser of the
responsibility of buying property and later having a tax lien forced upon the
same and requiring him to pay off the tax lien in order to keep his
property.  Id. at 22.